UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MULTISCAN TECHNOLOGIES USA, LLC, and MULTISCAN TECHNOLOGIES, S.L.,

Plaintiffs,

v.

AVNER COHN,

Defendant.

CASE NO. CV23-5978

ORDER

This matter is before the Court on Defendant Avner Cohn's motion to dismiss, Dkt. 10, and on Plaintiffs Multiscan Technologies, S.L. (MTS) and Multiscan Technologies USA, LLC (MTUSA)'s [1] responsive motion for sanctions, Dkt. 16. Cohn argues that the Court does not have subject matter jurisdiction over this patent dispute, and that Multiscan has failed to state a plausible claim. He seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6).

---

[1] This Order refers to the plaintiffs in the singular "Multiscan" for clarity and ease of reference unless the context requires it to differentiate between MTS and MTUSA.

Though his motion necessarily challenges Multiscan's allegations, Cohn asks the Court to consider several external documents—including what he asserts is a signed 2014 operating agreement—that he argues undermine Multiscan's claims. Cohn's motion also relies on his factual assertion that he has "not threatened" Multiscan with litigation over the subject patent. Dkt. 7 at ¶¶ 13–15.

Multiscan argues and demonstrates that it did not sign the contract upon which Cohn's motion is based; it claims the document is fraudulent. It demonstrates that Cohn repeatedly threatened patent litigation and asks the Court to sanction Cohn for submitting false evidence by striking his motion to dismiss and awarding attorneys' fees under Rule 11. Dkt. 16.

Because the Court is persuaded that the operating agreement and that the factual bases for Cohn's motion lack factual foundation and are wholly without merit, Multiscan's motion for sanctions, Dkt. 16, is **GRANTED**. The Court will award Multiscan the fees it incurred in responding to Cohn's motion and motioning for sanctions. Because the Court plainly has subject matter jurisdiction over the case, and because Multiscan's declaratory judgment claims are plausible, Cohn's motion to dismiss, Dkt. 10, is **DENIED** on its merits.

## I.  BACKGROUND

Cohn went into business with MTS to develop and implement color-sorting technology for MTS's agricultural machines in 2013. Dkt. 9 at 3. MTS and Cohn created an Oregon Limited Liability company, MTUSA, for this purpose around 2013 and

1  worked together on adapting color sorting technology to the pistachio industry until

2  around 2018. *Id.*

3     Cohn's solely owned company, Avision Electronics Designs LLC, entered into an

4  exclusive distributorship agreement with MTS in 2017 for sales of a pistachio sorter. Dkt.

5  15, Sharp Decl., ¶ 2. MTS terminated the agreement in 2021. *Id.* ¶ 3. Avision

6  commenced an arbitration in October 2021, contending that MTS breached the agreement

7  and owed damages. Dkt. 7-4, Avision Complaint. The arbitrator dismissed all Avision's

8  claims in December 2023. Dkt. 15, Sharp Decl., ¶ 4.

9     Multiscan sued Cohn here in October 2023. It contends that during their work

10 together on the pistachio sorter, Cohn learned "significant amounts of its confidential

11 information" related to MTS's pistachio sorter prototype development that "was not to be

12 shared with competitors." Dkt. 14, Opp. Mot. to Dismiss, at 8–9. Multiscan alleges that

13 Cohn used the confidential information he received from it when he "secretly" filed a

14 patent application in his own name on a sorting machine in 2015 ('004 Patent), while he

15 was still the President of MTUSA. *Id.* at 9–10. Multiscan asserts that it discovered that

16 the '004 Patent "may have been filed on MTS' intellectual property" through the Avision

17 arbitration. Dkt. 14, Resp. Mot. to Dismiss, at 10–11; Dkt. 15, Sharp. Decl., at 1–2.

18    Multiscan seeks seven declaratory judgments related to the '004 Patent, based on

19 federal patent statutes[2] and state law: (1) declaration and correction of inventorship under

20 35 U.S.C. § 256(b); (2) declaration of ownership of patent by Multiscan; (3) declaration

21

22    [2] 35 U.S.C. § 1, *et seq.*

1    of shop right license and/or quantum meruit by Multiscan; (4) misappropriation of

2    corporate assets/opportunities of MTUSA; (5) breach of fiduciary duties to MTUSA; (6)

3    declaration of noninfringement of patent; (7) declaration of invalidity of patent, and (8)

4    misappropriation of trade secrets. Dkt. 9, Am. Compl., at 1–2. Multiscan additionally

5    seeks damages and injunctive relief. *Id*. at 16–17. Multiscan's complaint asserts the Court

6    has federal question jurisdiction over its § 256(b) claim, and supplemental jurisdiction

7    over the remaining claims. It asserts the Court also has diversity jurisdiction over the case

8    because the parties are of diverse citizenship and the amount in controversy exceeds

9    $75,000. *Id*. at 2.

10    　　Cohn's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is

11    unclear. He concedes that Multiscan's complaint raises a federal question, but argues that

12    it does not have standing to assert any of its claims. This argument is based on his

13    assertion that he never "formally" threatened to assert the '004 Patent and that he alone

14    developed the technology for it. *Id*. at 2. He argues that Multiscan fails to meet the

15    amount in controversy for diversity jurisdiction. *Id*. at 17–18. He then argues that once

16    the Court dismisses some of Multiscan's claims, it will no longer have supplemental

17    jurisdiction over the remaining claims. *Id*. at 17, 26. Cohn additionally asks the Court to

18    decline to address Multiscan's claims for relief under the Declaratory Judgment Act. *Id*.

19    at 9, 16, 23.

20    　　Cohn's arguments for dismissal under Rule 12(b)(6) are varied. He asserts that

21    Multiscan's claim for correction of inventorship pursuant to 35 U.S.C. § 256 is not

22    legally cognizable because Multiscan alleges he fraudulently omitted them from the

1    patent and the statute only allows for corrections due to "innocent" mistakes. *Id*. at 6. The

2    rest of his arguments that Multiscan failed to plead plausible claims rely heavily on the

3    document that he submits was the final operating agreement between himself and

4    Multiscan. For instance, he argues the agreement allowed him to "engage independently"

5    in other business and that this undermines Multiscan's claim for a shop right or quantum

6    meruit. *Id*. at 15–16. He similarly argues that the agreement limited his fiduciary duties,

7    making Multiscan's misappropriation of corporate assets and breach of fiduciary duty

8    claims implausible. *Id*. at 20.

9        Multiscan moves for Rule 11 sanctions based on two submissions in support of his

10    motion to dismiss. Dkt. 16. Multiscan demonstrates that the document Cohn submits is

11    the final operating agreement between Cohn and MTUSA, Dkt. 7-2, is not an agreement

12    that was actually signed. It also contends and demonstrates that Cohn's assertion that he

13    never threatened infringement of the '004 Patent is clearly contrary to the record. It asks

14    that the Court sanction Cohn by striking both his declaration and his motion to dismiss

15    and awarding monetary sanctions. Dkt. 16, Sanctions Mot., at 10. As is explained in

16    section II of this Order, the Court awards monetary sanctions and rejects Cohn's

17    arguments based on the agreement and declaration. Because addressing the dismissal

18    arguments will better facilitate an expeditious resolution of the claims, the Court declines

19    to strike the motion to dismiss.

20        Multiscan also contends that Cohn's Rule 12(b)(6) motion relies on several

21    exhibits that were not attached to or referenced in its complaint. It asks the Court to strike

22    those submissions and to decline to consider them in support of Cohn's Rule 12(b)(6)

1   motion. Dkt. 14, Resp. to Dismiss, at 6 (citing Fed. R. Civ. Pro. 12(d)). The Court will

2   take judicial notice of the Avision arbitration complaint, but will not consider the rest on

3   a Rule 12(b)(6) motion.

4   The issues are addressed in turn.

## II.   MOTION FOR SANCTIONS GRANTED

6   Multiscan demonstrates that it never signed a final operating agreement and that

7   the document Cohn submitted, Dkt. 7-2, is therefore not the parties' final, signed

8   agreement. Dkt. 16, Mot. for Sanctions, at 9. Cohn flatly denies forging any signature and

9   asserts that the parties' conduct shows that the document he submitted is the final

10  operating agreement. Dkt. 23, Resp. to Sanctions, at 3–5.

11  Multiscan also demonstrates that Cohn's assertion that he never threatened

12  infringement of the '004 Patent[3] is contrary to the record. Cohn responds that he has

13  never "formally" asserted the patent nor threatened to do so. Dkt. 23, Resp. to Sanctions,

14  at 6. Multiscan moves for Rule 11 sanctions based on both what it asserts is a fraudulent

15  operating agreement and material misstatements about asserting the patent. Dkt. 16,

16  Sanctions Mot., at 3. It asks that the Court sanction Cohn by striking both his declaration

17  and his Motion to Dismiss and awarding monetary sanctions. *Id.* at 10.

18  Rule 11 requires a court to impose sanctions where an attorney signed pleadings

19  that are frivolous or without merit or has filed a pleading for an improper purpose. Fed.

20  R. Civ. P. 11; *see Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir.

---

[3] Dkt. 10, Mot. to Dismiss, at 14 ("Cohn has neither asserted the '004 Patent against Plaintiffs nor has he made overtures that he imminently plans to"), 20 (same), 22 (same).

1990) (en banc). Sanctions are required under Rule 11 "even though the paper was not

filed in subjective bad faith" if a filing is "frivolous, legally unreasonable, or without

factual foundation." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986),

*abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990);

*c.f. O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (frivolous means "having no

arguable basis in fact or law").

      Multiscan supports its serious assertion that Cohn submitted a false, forged

operating agreement, by demonstrating that Cohn and Alvaro Soler, MTS's CEO and

Board President, exchanged drafts of unexecuted operating agreements for years after the

2014 "agreement" upon which Cohn's motion primarily relies. Dkt. 18, Sharp. Decl.,

Exhs. 8–12, Dkt. 18-9 (Oct. 2015 email); Dkt. 18-10 (Jan. 2016 email); Dkt. 18-11 (May

2016 email), Dkt. 18-12 (July 2015 email). Soler testifies that he never signed the

agreement Cohn submitted; he never signed any operating agreement with Cohn. Dkt. 17,

Soler Decl., ¶ 12. Soler suspects that Cohn copied his signature from a January 2021

letter to Cohn onto the document Cohn claims is the parties "final agreement." Dkt. 17,

Soler Decl., ¶12.

      Cohn "denies that he forged anyone's signature on the Operating Agreement."

Dkt. 23, Resp. Sanctions, at 3. He "submits correspondence relevant to the formation of

the Operating Agreement, including communications between the parties and

correspondence from an attorney who assisted with its drafting and discussion of

particular terms." *Id*. at 4. He does not acknowledge that most of these emails discussing

the formation of an operating agreement are dated well after the April 2014 signature date

1    on the document he swears is the final agreement. *Compare* Dkt. 7-2 at 12 (April 2014

2    signature) *with* Dkt. 23-3 (emails in 2017 discussing edits to draft operating agreement).

3    He does not explain, let alone provide evidence, as to how or where the parties

4    supposedly signed a final agreement. Cohn instead argues that "the parties followed the

5    terms of the Operating Agreement following its execution" and that this "clearly

6    indicate[s]" that he had a reasonable basis in both law and in fact for his belief that the

7    document he submitted is the "true and correct copy of the agreement between the

8    parties." *Id*. at 4–5.

9          The record makes plain that Cohn's assertion that the document is the final

10    operating agreement between the parties is "frivolous" because it is wholly without merit

11    or factual foundation. Cohn's exhibits illustrating the "formation" of an agreement are of

12    no moment. The issue is not whether the parties attempted to formulate an agreement, or

13    even whether they may be deemed to have an agreement despite the fact they never

14    executed one. The issue is whether Cohn's assertion that Soler signed the agreement in

15    April 2014 can be supported by the record. Cohn's apparent claim that the parties acted

16    as though they had an agreement is similarly unavailing. He offers no credible evidence

17    to show that the document he submitted was a final agreement, nor that Soler's signature

18    on it is valid. Although the Court will not conclude that Cohn committed forgery or

19    submitted a fraudulent document without an evidentiary hearing, it is persuaded that he

20    violated Rule 11 by submitting Dkt. 7-4. Multiscan's motion for sanctions on this basis is

21    **GRANTED**.

22

Multiscan also argues that Cohn violated Rule 11 by repeatedly asserting he never made threats of infringement of the '004 Patent. These assertions are in his motion to dismiss and accompanying declaration, Dkt. 7-1. Dkt. 16, Sanctions Mot., at 8. As Cohn himself recognizes, this assertion is "material" because it impacts the Court's ability to discern whether Multiscan has standing and whether it should offer declaratory relief. *See* Dkt. 10, Mot. to Dismiss, at 20, 22 ("Cohn has made no accusatory claims against Plaintiffs and thus this does not give rise to jurisdiction.").

Multiscan demonstrates that Cohn made numerous threats of infringement and he implies that he already has formalized patent infringement claims in the Avision arbitration. Dkt. 16, Sanctions Mot., at 3. This includes his February 2023 motion to compel discovery in the Avision arbitration, asserting that "[Cohn] *has* patent infringement claims against both [Multiscan Technologies USA and Multiscan Technologies S.L.] but by agreement of the parties, *the infringement claims* are outside the scope of this arbitration." Dkt. 22-1, Mot. to Compel, at 3 (emphasis added). His settlement offer in Avision is similarly definite about the then-existence of formal patent claims: "[the parties] now desire to settle the Litigation and enter ...global settlement of the subject matter of the Litigation *and claim that Multiscan has infringed the '004 Patent*, all on the terms and conditions set forth herein." Dkt. 18-5, Settlement Offer, at 2 (emphasis added).

Multiscan emphasizes that in April 2022, Cohn's counsel admitted he was asserting the '004 Patent: "your client [Multiscan] will need to stop using our client's patented technology, US Patent 9,676,004. If they would rather become licensed, the

1   royalty fee is $100,000 per year." Dkt. 18-1, Pitchford Email. Cohn's *Avision* deposition

2   confirmed his contention that Multiscan was "utilizing something that's subject to" the

3   '004 Patent and Multiscan owed him damages. Dkt. 18-3, Cohn Dep., at 3–4.

4           Cohn responds that he "never formally asserted his patent" and that Multiscan's

5   correspondence is insufficient to establish that he claimed infringement or threatened to

6   file a claim for infringement. Dkt. 23, Resp. Sanctions, at 6. He argues that "[p]atent

7   owners are allowed to discuss the existence of their patents without triggering the

8   declaratory judgment jurisdiction" and that his prior communications about the '004

9   Patent were not actual threats. *Id*. at 5.

10          Cohn's assertion that he has never threatened to assert the '004 Patent against

11  Multiscan warrants Rule 11 sanctions. Cohn did not merely "discuss the existence" of his

12  '004 Patent but rather threatened a definite and concrete dispute. In the Avision

13  arbitration, his attorney[4] stated that he "has patent infringement *claims* against both [MTS

14  and MTUSA.]" not that he merely has patents.  Dkt. 22-1, Avision Mot. to Compel, at 3

15  (emphasis added). His settlement offer in the Avision arbitration was similarly definite

16  about the existence of formalized claims where he proposed settling the "claim that

17  Multiscan has infringed the '004 Patent." Dkt. 18-5, Avision Settlement Offer, at 2.

18  Finally, Cohn has consistently maintained that he intended to charge Multiscan for the

19  use of the license. *See* Dkt. 18-3, Cohn Dep., at 3–4; Dkt. 18-1, Pitchford email, at 1

20  (informing Multiscan the license for the patent is $100,000 annually). Given the clarity of

21

22          [4] The same attorney represents Cohn in this case.

the record on this point, Cohn's arguments that he did not threaten to assert the patent are

frivolous, that is wholly without merit, and consequently warrant Rule 11 sanctions.

The magnitude of Cohn's violations cannot be overstated. Cohn's submission of

the purported operating agreement abused the Court's time and trust as well as that of his

opposing counsel. *See Kenno v. Colorado's Governor's Off. of Info. Tech.*, 2021 WL

2682619, at \*19 (D. Colo. June 30, 2021) (fabricated evidence is "the most egregious

misconduct which justifies a finding of fraud upon the Court."). His frivolous assertions

regarding threats to assert the '004 Patent are serious. The Court cannot hope to neutrally

apply the law to facts if parties mislead it.

Rule 11 leaves discretion to form appropriate sanctions for violations. Sanctions

"must be limited to what suffices to deter repetition of the conduct or comparable conduct

by others similarly situated" and "may include nonmonetary directives; an order to pay a

penalty into court; or, if imposed on motion and warranted for effective deterrence, an

order directing payment to the movant of part or all of the reasonable attorney's fees and

other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Monetary sanctions are warranted to deter Cohn from repeating his behavior.

Cohn is **ORDERED** to pay the fees and costs Multiscan's counsel reasonably incurred in

responding to Cohn's motion to dismiss and for justifiably seeking Rule 11 sanctions. If

necessary, Multiscan shall submit a motion for such fees within 14 days of this order.

Alternatively, and preferably, the parties shall notify the Court that the sanction has been

paid.

1
### III.  MOTION TO DISMISS

2
**A.      The Court has subject matter jurisdiction.**

3        Cohn's Rule 12(b)(1) "lack of subject matter jurisdiction" arguments are

4 intertwined and imprecise. Despite acknowledging that the Court has federal question

5 jurisdiction, he asserts the Court does not have diversity jurisdiction over a subset of

6 claims. He contends Multiscan has not demonstrated that each of its state law claims

7 involve more than $75,000, and therefore that the court does not have diversity

8 jurisdiction over them. Dkt. 10, Mot. to Dismiss, at 17–18. He makes a similarly

9 confused argument that "because all federal question and diversity jurisdiction claims

10 should be dismissed" no supplemental jurisdiction extends to the remaining state law

11 claims. *Id*. at 18. The weight of his 12(b)(1) arguments however focuses on his assertion

12 that Multiscan lacks a sufficient injury for standing for many of its claims. These

13 arguments are addressed in turn.

14        A Federal Rule of Civil Procedure 12(b)(1) motion for lack of subject matter

15 jurisdiction raises the threshold question of whether the Court can adjudicate the claims.

16 "A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual

17 allegations in the light most favorable to the plaintiff, the action: (1) does not arise under

18 the Constitution, laws, or treaties of the United States, or does not fall within one of the

19 other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case

20 or controversy within the meaning of the Constitution; or (3) is not one described by any

21 jurisdictional statute." *United Transp. Union v. Burlington N. Santa Fe R. Co.*, No. C06-

22 5441 RBL, 2007 WL 26761, at *2 (W.D. Wash. Jan. 2, 2007), *aff'd*, 528 F.3d 674 (9th

1   Cir. 2008). The plaintiffs bear the burden of proving the existence of subject matter

2   jurisdiction. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989).

3   **1.    The Court has both federal question and diversity jurisdiction over this action.**

4

5   Cohn acknowledges that Multiscan invoked this Court's federal question

6   jurisdiction as well as diversity jurisdiction for its case. *See*, Dkt. 10, Mot to Dismiss, at

7   18 ("Once all federal question and diversity jurisdiction claims are dismissed . . ."). He

8   does not challenge subject matter jurisdiction for the federal question claims under Rule

9   12(b)(1). He argues however that Multiscan fails to satisfy the diversity jurisdiction

10   amount in controversy requirement on a claim-by-claim basis. He argues that Multiscan's

11   shop right license and/or quantum meruit claims (claim 3), misappropriation of corporate

12   assets claim (claim 4), and breach of fiduciary duty claim (claim 5) do not involve

13   $75,000. He argues that the court should dismiss those claims for lack of subject matter

14   jurisdiction. *Id*. at 17–18. Cohn argues that "[o]nce all federal question and diversity

15   jurisdiction claims are dismissed… no supplemental jurisdiction would extend to state

16   law claims." *Id*. at 17, 26.

17   Cohn's arguments are contrary to bedrock jurisdictional law and the record. First,

18   the undisputed existence of federal question jurisdiction is fatal to his arguments. As

19   Cohn recognizes, some of Multiscan's claims arise under patent laws, 35 U.S.C. § 1, *et

20   seq*. Consequently, so long as the rest of the claims are a part of the same "case or

21   controversy" as the federal question claims, the Court has supplemental jurisdiction over

22   them, and it did so when the case was filed. 28 U.S.C. § 1367(a). To his credit, Cohn

1    does not attempt to argue that the diversity claims are not a part of the same case or

2    controversy as the federal question claims. This alone nullifies his arguments that the

3    diversity claims fail to satisfy the amount in controversy requirement for diversity

4    jurisdiction. The Court has supplemental jurisdiction over Multiscan's state law claims,

5    regardless of the amount in controversy.

6          But even in the absence of federal question jurisdiction, the parties are of diverse

7    citizenship and Multiscan both alleges and demonstrates that the amount in controversy

8    in the case easily exceeds $75,000. 28 U.S.C. § 1332. The amount in controversy is

9    determined from the face of the pleadings. *Crum v. Circus Circus Enterprises*, 231 F.3d

10   1129, 1131 (9th Cir. 2000). It is determined by the "value of the object of the litigation"

11   in the case as a whole, *not* on a claim-by-claim basis. *See Hunt v. Washington State Apple*

12   *Advert. Comm'n*, 432 U.S. 333, 347 (1977). In other words, plaintiffs need not establish

13   that each claim is worth at least $75,000, but rather that the amount in controversy in the

14   whole case is at least that much. The amount plead controls so long as the sum claimed is

15   made in good faith. *Id.* For dismissal to be justified, it must appear to "legal certainty the

16   claim is really for less than the jurisdictional amount." *Id.* (quoting *St. Paul Mercury*

17   *Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

18         Multiscan's complaint asserts that in the first year alone, sales of the pistachio

19   sorter with the contested "sorting system" technology exceeded half a million dollars.

20   Dkt. 9, Am. Compl., ¶ 30. Cohn's own counsel valued the licensing for the '004 Patent at

21   "$100,000 a year." Dkt. 15, Sharp Decl. ¶ 6; Dkt. 15-1, Pitchford email. Cohn does not

22   and cannot argue that Multiscan claimed the jurisdictional threshold in bad faith, and his

1    bald assertions come nowhere near establishing a "legal certainty" that the controversy

2    involves less than $75,000. Cohn provides no authority for to the argument that the Court

3    must dismiss individual claims that fail to satisfy the amount in controversy.

4    　　　Cohn's supplemental jurisdiction argument fails for similar reasons. He argues

5    that "[o]nce all federal question and diversity jurisdiction claims are dismissed… no

6    supplemental jurisdiction would extend to state law claims." Dkt. 10, Mot. to Dismiss, at

7    18. Even if the Court were to dismiss the claims over which it has original jurisdiction,

8    Cohn's argument fails. The Court makes its determination of whether to exercise

9    supplemental jurisdiction at the time of filing. Even if it later dismisses all claims over

10   which it has original jurisdiction, it has discretion to retain jurisdiction over the

11   supplemental claims so long as they arise out of the same case or controversy. 28 U.S.C.

12   §1367(c). Again, Cohn does not argue that the state law claims fail to arise out of the

13   same case or controversy as the federal question or diversity claims.

14   　　　In sum, the Court is satisfied that it has both federal and diversity jurisdiction over

15   Multiscan's claims.

16   　　　**2.    Multiscan has Article III standing.**

17   　　　Cohn also argues Multiscan lacks a sufficiently concrete, imminent injury for

18   claims 2 through 7 and that the Court therefore should dismiss these claims for lack of

19   standing. His claim specific challenges to the sufficiency of Multiscan's injuries are as

20   follows: in its second claim, Multiscan seeks a declaration that MTUSA owned the '004

21   Patent. Dkt. 9, Am. Compl., at 9. Cohn argues that "Plaintiffs merely assert ownership

22   without articulating any specific harm suffered" and that "[t]here exists no legal basis

1  justifying Plaintiffs' entitlement to ownership, thereby establishing Plaintiffs suffered no

2  actual harm." Dkt. 10, Mot. to Dismiss, at 8. In its third claim, Multiscan seeks

3  declaration of license and right to use and or quantum meruit for the '004 Patent. Dkt. 9,

4  Am. Compl., at 10. Cohn asserts that because he "has neither asserted the '004 Patent

5  against Plaintiffs nor has he made overtures that he imminently plans to" Multiscan lacks

6  a sufficiently imminent injury for standing. Dkt. 10, Mot. to Dismiss, at 15. He makes an

7  identical argument regarding the injury for the claims for declaration of non-infringement

8  (claim 6) and declaration of invalidity for the patent (claim 7). *Id*. at 20. In their fourth

9  and fifth claims, Multiscan contends Cohn misappropriated a corporate opportunity and

10 breached fiduciary duties. Dkt. 9, Am. Compl., at 12–13. Cohn again argues that

11 Multiscan fails to articulate "any specific harm suffered" and that this omission is fatal

12 "in light of the Operating Agreement explicitly allowing Cohn to 'engage independently

13 or with others in other business and investment ventures of every nature and description

14 and shall have no obligation to account to the LLC for such business.'" Dkt. 10, Mot. to

15 Dismiss, at 18 (quoting Dkt. 7-2, purported operating agreement, ¶2.2).

16      To establish standing, a plaintiff must demonstrate the irreducible constitutional

17 minimum of: (1) an injury-in-fact via "an invasion of a legally protected interest which is

18 (a) concrete and particularized, and (b) actual or imminent, not conjectural or

19 hypothetical;" (2) causation—that the injury is "fairly traceable to the challenged action

20 of the defendant;" and (3) redressability—that it is "likely, as opposed to merely

21 speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. Of*

22 *Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). To

survive a Rule 12(b)(1) attack on standing a plaintiff "must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). At this stage, the Court presumes to be true the factual allegations in the pleadings, and construes in favor of plaintiff all reasonable inferences therefrom. *See Lujan*, 504 U.S. at 555.

The Court concludes that Multiscan easily satisfies constitutional standing for each of the challenged claims. First, the Court has already determined that the document Cohn submitted is not in fact the parties' operating agreement, and it therefore rejects outright Cohn's standing arguments based on that document. The Court similarly rejects his standing arguments based on Cohn's material misstatement that he did not threaten to assert the '004 Patent. His repeated, explicit threats to assert the patent against Multiscan constitutes a sufficiently "imminent" injury. A patent is property, and one which Cohn has valued at $100,000 per year. Dkt. 15, Sharp Decl., ¶ 6; Dkt. 15-1, Pitchford email. Multiscan's loss of ownership and use of the patent, as well as Cohn's alleged abuse of fiduciary duties in filing for it, are plainly concrete injuries, directly traceable to Cohn, and which can be remedied by this Court.

### 3.    Declaratory relief is warranted under the Declaratory Judgement Act.

Cohn builds off his standing arguments to assert that "no actual controversy exists" and the Court therefore should decline to exercise its declaratory authority over the ownership, non-infringement, and invalidity claims. *Id*. at 9, 23. In the alternative, he argues even if standing exists, the Court should exercise its broad discretion under the Declaratory Judgment Act to decline relief. *Id*. He additionally argues that the Court

1  should not offer declaratory relief for the claim for shop right license/quantum meruit

2  (claim 3) because the "Act is not designed to adjudicate affirmative defenses as claims

3  for relief." *Id*. at 16.

4       The Declaratory Judgement Act (DJA), 28 U.S.C. §2201 *et seq.*, enables courts to

5  offer declaratory relief so long as the dispute is "definite and concrete, touching the legal

6  relations of parties having adverse legal interests;" and the court is able to "admi[t] of

7  specific relief through a decree of a conclusive character, as distinguished from an

8  opinion advising what the law would be upon a hypothetical state of facts." *MedImmune,*

9  *Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, (2007) (quoting and citing *Aetna Life Ins. Co.*

10  *of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937)). The Act does not itself

11  confer subject matter jurisdiction but provides relief for disputes that come within the

12  federal courts' jurisdiction on some other basis. *See Franchise Tax Bd. v. Construction*

13  *Laborers Vacation Trust*, 463 U.S. 1, 15–16 (1983). A declaratory judgment claim is

14  generally proper where it rests upon, and will be determinative in resolving an underlying

15  cause of action involving claims for damages. *Sony Elecs., Inc. v. Guardian Media*

16  *Techs.*, Ltd., 497 F.3d 1271, 1283–84 (Fed. Cir. 2007); *see also Tech. Licensing Corp. v.*

17  *Technicolor USA, Inc*., 800 F. Supp. 2d 1116, 1120 (E.D. Cal. 2011). Where there is an

18  actual controversy, the Court's jurisdiction under the Act is discretionary. *Cat Tech LLC*

19  *v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008). However, "[w]hen there is no

20  actual controversy, the court has no discretion to decide  the  case." *Id.*

21       The Court concludes that the challenged claims satisfy the jurisdictional

22  requirements for declaratory relief. The record plainly establishes an "actual controversy"

over the creation, ownership, and use of the patent. *See* Dkt. 7-1, Cohn Decl.*, ¶¶ 7-12*; Dkt 15-1 (Pitchford telling Multiscan that the royalty fee for the license is $100,000 annually); Dkt. 15, Sharp Decl., ¶ 9; Dkt. 15-4, Leijon E-mail, ("patent infringement claims may be dealt with at a later date"). The Court is similarly unpersuaded by Cohn's argument that the act is not designed to adjudicate affirmative defenses of shop right and quantum meruit (claim 3). The issue of whether plaintiffs are due a royalty-free license or quantum meruit for the patent are actively contested legal rights stemming from a concrete dispute and thus satisfy the jurisdictional requirements for declaratory relief.

**B.    Multiscan's claims survive Cohn's 12(b)(6) challenge.**

**1.    Request to exclude Cohn's declaration and exhibits from 12(b)(6) consideration.**

As an initial matter, Cohn's Rule 12(b)(6) motion relies on several exhibits that were not attached to or referenced by Multiscan's complaint. These documents include his exhibits for his original motion to dismiss:[5] (1) Cohn's declaration, Dkt. 7-1; (2) the purported operating agreement between him and MTUSA, Dkt. 7-2; (3) an Email regarding a breach of contract complaint in the lawsuit between Avision and Multiscan, Dkt. 7-3; and (4) a copy of the complaint in the Avision lawsuit, Dkt. 7-4.

Cohn additionally attached multiple exhibits to his reply in support of his motion to dismiss that Multiscan argues fall outside the pleadings, Dkt. 19-1. These exhibits

---

[5] The Court dismissed Cohn's original motion to dismiss, Dkt. 7, as moot after Multiscan filed an amended complaint. Dkt. 27. Cohn relies on his original attachments, Dkts. 7-1 to 7-4, in his new motion for dismissal. Dkt. 10.

1    appear to have been attached to the complaint between Avision and Multiscan when it

2    was filed in Skamania County Superior Court and include various communications and

3    legal documents between those companies. Cohn does not cite to Exhibits A–I (docketed

4    as a group at 19-1) nor discuss them in the reply.

5        Multiscan argues that considering these exhibits in support of a motion to dismiss

6    under Rule 12(b)(6) would require converting Cohn's motion to one for summary

7    judgment pursuant to Rule 12(d). Dkt. 14, Resp. to Mot. for Dismissal, at 6; Dkt. 28,

8    Surreply, at 1. This rule provides:

9        (d) **Result Of Presenting Matters Outside the Pleadings**. If, on a motion
         under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to
10       and not excluded by the court, the motion must be treated as one for
         summary judgment under Rule 56. All parties must be given a reasonable
11       opportunity to present all the material that is pertinent to the motion.

12   Fed. R. Civ. P. 12(d). If the Court treats the motion under Rule 56, Multiscan requests

13   time to secure declarations discovery.  Dkt. 14, Resp. to Mot. to Dismiss, at 6.

14       Cohn responds that Court can and should consider the exhibits attached to his

15   original motion to dismiss, Dkts. 7-1 through 7-4, without converting the motion to one

16   for summary judgment. Dkt. 19, Reply Mot. to Dismiss, at 2. He argues that the

17   purported operating agreement (Dkt. 7-2) is "central to the Multiscan's claims and is

18   explicitly referenced multiple times in the Amended Complaint," and consequently is fair

19   game to consider without conversion. *Id*. at 4. He argues that the email exhibit discussing

20   the separate Avision lawsuit against Multiscan (Dkt. 7-3) and the complaint from that

21   lawsuit (Dkt. 7-4) merit consideration without conversion because they are "examples of

22   the many emails exchanged between the parties, a subject extensively covered in the

1    Amended Complaint." *Id*. Cohn additionally argues that the Court can properly take

2    judicial notice of the complaint between Avision against Multiscan (Dkt. 7-4). Cohn does

3    not make any argument as to why the Court could consider the exhibits that he submits at

4    Dkt. 19-1 without conversion under Rule 12(d).

5         As Rule 12(d) makes plain, a Court may not consider any material outside the

6    pleadings in ruling on a 12(b)(6) motion unless it converts the motion to one for summary

7    judgment and the opposing party is entitled to respond to the new motion. There are three

8    general exceptions to this rule. First, the court may consider material submitted as part of

9    the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Second,

10   under the "incorporation by reference doctrine," courts may consider "documents whose

11   contents are alleged in a complaint and whose authenticity no party questions, but which

12   are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068,

13   1076 (9th Cir. 2005). The Ninth Circuit has extended the doctrine "to situations in which

14   the plaintiff's claim depends on the contents of a document, the defendant attaches the

15   document to its motion to dismiss, and the parties do not dispute the authenticity of the

16   document, even though the plaintiff does not explicitly allege the contents of that

17   document in the complaint." *Id*. Third, the Court may take judicial notice of "matters of

18   public record." *Lee*, 250 F.3d at 688.

19        The only submission that the Court can consider here without conversion is the

20   prior complaint between Avision and Multiscan, Dkt. 7-4, because the Court can take

21   judicial notice of the fact that Avision filed a complaint in another court. *See* Fed. R. Ev.

22   201(b)(2). The Court will not consider the attachments to that complaint, Dkt. 19-1

1    (Exhibits A–J), because Cohn submitted them for the first time in his reply in support of

2    his motion to dismiss, Dkt. 19. *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307

3    (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented

4    for the first time in Reply are waived") (citing *United States v. Patterson*, 230 F.3d 1168,

5    1172 (9th Cir. 2000)).

6        The Court cannot consider his declaration, Dkt. 7-1, for 12(b)(6) purposes. Even

7    putting aside the fact that the declaration violates Rule 11 with its material misstatements

8    of the record, it is plainly a document external to the pleadings that makes factual

9    assertions that simply purport to contradict the facts Multiscan alleges.

10       The Court similarly cannot consider the purported operating agreement, Dkt. 7-2.

11   First, contrary to Cohn's assertions, the complaint does not reference the agreement at all,

12   let alone "multiple times." Tellingly, Cohn does not offer a single citation to support what

13   portion of the complaint references the agreement. Even if it did, Multiscan has

14   demonstrated that the document Cohn submitted is not the parties' agreement, and the

15   incorporation by reference doctrine bars consideration where parties dispute the

16   authenticity of the document. *Knievel*, 393 F.3d at 1076.

17       The Court also does not consider the email exhibit discussing the separate Avision

18   arbitration against Multiscan (Dkt. 7-3). Although the complaint references that

19   Multiscan and Cohn emailed, it does not reference any emails regarding the Avision

20   arbitration. *See generally* Dkt. 9, Am. Compl.

21       In sum, the Court will not convert the motion to dismiss into a motion for

22   summary judgment, and it will not consider Cohn's declaration Dkt. 7-1, the purported

operating agreement Dkt. 7-2, or the email referencing the Avision dispute Dkt. 7-3, nor

any of the exhibits in Dkt. 19-1 in its 12(b)(6) analysis. It takes judicial notice of the

Avision complaint, Dkt. 7-4.

### 2. Multiscan states a plausible claim for correction of inventorship.

Multiscan's first claim contends that one or more of MTS's employees are co-

inventors of the '004 Patent and seeks a correction of inventorship pursuant to 35 U.S.C.

§ 256. Dkt. 9, Am. Compl., at ¶36.

The text of section 256, operative since 2011, reads:

> **(a) Correction.**--Whenever through error a person is named in an issued
> patent as the inventor, or through error an inventor is not named in an
> issued patent, the Director may, on application of all the parties and
> assignees, with proof of the facts and such other requirements as may be
> imposed, issue a certificate correcting such error.

35 U.S.C. § 256(a).

Cohn argues Multiscan fails to state a cognizable claim under section 256. Dkt. 10,

Mot. to Dismiss, at 6. He asserts that section 256 provides a remedy for "only innocent

errors in joinder or non-joinder of inventors." *Id*. (quoting *Bemis v. Chevron Rsch. Co.*,

599 F.2d 910, 912 (9th Cir. 1979)). Because Multiscan contends its exclusion "was

fraudulent," Cohn argues Multiscan cannot use section 256 to correct inventorship. Dkt.

10.

Multiscan contends that "*Bemis* is not the law" and that section 256 can serve to

correct the inventorship even though it alleges that Cohn's submission was fraudulent.

Dkt. 14, Resp. Mot. to Dismiss, at 20. It emphasizes that Congress amended the Patent

Act in 2011 to remove the "error arose without any deceptive intention on his part"

1  language from the section 256, which was the phrase that *Bemis* relied on. *Id*. at 20

2  (citing Pub. L. 112-29 §20(f)(1)). Even before that 2011 amendment, Multiscan points

3  out that the Federal Circuit, which was created after the Ninth Circuit decided *Bemis*,

4  held that the "without deceptive intention" language in the former section 256 text

5  "referred to the omitted inventor—not the listed inventor who was fraudulent." *Id*. (citing

6  *Stark v. Advanced Magnetics, Inc.,* 119 F.3d 1551, 1554 (Fed. Cir. 1997). Multiscan

7  emphasizes that courts sitting in the Ninth Circuit have recognized that the Federal

8  Circuit overruled *Bemis* since at least 1997. *See Vivus, Inc. v. Kercso,* 977 F. Supp. 1004,

9  1009 (N.D. Cal. 1997).

10  Multiscan's first claim is cognizable under section 256. The text of section 256 no

11  longer contains the "deceptive intent" language that *Bemis* relies on. Where Congress

12  strikes phrases from a previous version of a statute, courts can safely assume that was an

13  intentional choice. *See Darkenwald v. State Emp't Sec. Dep't,* 183 Wn.2d 237, 252

14  (2015) ("A change in legislative intent is presumed when a material change is made in a

15  statute."); LEAHY-SMITH AMERICA INVENTS ACT, Pub. L. 112-29, § 20, 125 Stat.

16  284 (Sept. 16, 2012). Additionally, the Court cannot overlook the authority from the

17  Federal Circuit overruling *Bemis* and recognition from sister courts sitting in the Ninth

18  Circuit of that overruling even before Congress amended section 256 in 2011. *Stark*, 119

19  F.3d at 1556–57; *Vivus,* 977 F. Supp. at 1009.[6]

20

21          [6] The Court recognizes it reaches a different conclusion than that in an unreported
    decision from this district in *Nat'l Prod. Inc. v. Innovative Intelligent Prod., LLC*, No. C20-428
22  RAJ, 2021 WL 4948165, at *4 (W.D. Wash. Oct. 25, 2021). The decision did not acknowledge

1      ### 3.  Multiscan plausibly alleges a declaration of ownership claim.

2      Multiscan seeks a declaratory judgment that MTUSA owns the '004 Patent. Dkt.

3      9, Am. Compl., at 9 (claim 2).

4      Cohn argues that Multiscan fails to allege facts plausibly supporting this claim

5      because it "fail[s] to allege the existence of any assignment or agreement giving them

6      patent rights, therefore legal and equitable principles do not support a declaration of

7      patent ownership favoring Plaintiffs." Dkt. 10, Mot. to Dismiss, at 6. He asserts that

8      Multiscan "fall[s] short of providing any allegation of contributions by them to the

9      conception of the invention, the existence of assignments or agreements to assign, the

10     existence of a hired-to-invent agreement, or that Cohn was an employee." *Id*.

11      Multiscan responds that that its claim for declaration of ownership "do[es] not

12     rest upon a claim of an express written assignment, but rather a *duty to assign*, so

13     the absence of an executed written assignment has no bearing on . . . [Multiscan's]

14     claim." Dkt. 14, Resp. Mot. to Dismiss, at 21. It asserts that the "duty requires full

15     disclosure of the opportunity, and consent before taking it for themselves, and the burden

16     is on the officer to show the transaction is fair to the company." *Id*. (citing *Homes, Inc. v.*

17     *Williams*, 272 Va. 462, 634 S.E.2d 737, 743-44 (Va. 2006)).

18      An officer or director of a corporation generally has a fiduciary duty to assign

19     patents to that corporation that were worked on during their tenure with the corporation

20     and which relate to the business of that corporation. *See, e.g., North Branch Prod., Inc.,*

21     
22     the 2011 amendment to section 256 nor the Federal Circuit's decision in *Stark.* In any event, this case is unpublished and consequently is non-binding authority.

*v. Fisher,* 131 U.S.P.Q. 135 (D.D.C.1961), *aff'd,* 312 F.2d 880 (D.C.Cir.1962), *cert. denied,* 373 U.S. 913 (1963) (where patentee was principal shareholder, general manager, and director in charge of entire operation, the company was entitled to patent ownership). "[W]here the inventor is more than an employee and occupies a special relationship of trust and confidence to the business, courts under certain circumstances have held it inequitable for the individual to retain a title which more properly belongs to the company. In such instances, the fiduciary agent will be compelled to assign the patent." *Kennedy v. Wright*, 676 F. Supp. 888, 892 (C.D. Ill. 1988), *aff'd,* 867 F.2d 616 (Fed. Cir. 1989). Generally, this requires the plaintiff to establish (1) a fiduciary relationship between the person who applied for the patent and the business, and (2) that the patent relates to the nature of the business. *See, e.g., Gasser v. Infanti Int'l, Inc.*, 353 F. Supp. 2d 342, 352 (E.D.N.Y. 2005) ("director's fiduciary duty may include the obligation to assign a patent to the corporation if the officer or director invented the subject matter of the patent while employed by the corporation and the invention relates to the business of the corporation.").

The Court concludes that Multiscan has alleged sufficient facts and has a sufficient legal basis to sustain their claim for patent ownership under Rule 12(b)(6). The complaint alleges Cohn's role as a fiduciary of MTUSA and that the patent relates to the nature of the business of MTUSA. Consequently, it is plausible that Multiscan can establish ownership of the patent under the duty to assign theory. *See Twombly*, 550 U.S. at 555. Furthermore, Cohn's arguments to the contrary rely heavily on his declaration, Dkt. 7-1, particularly his assertion that he "invented" the material claimed in the '004 Patent prior

1    to formation of MTUSA. *See* Dkt 7-1 ¶ 7. The Court does not consider his declaration for

2    purposes of Rule 12(b)(6) analysis.

3        **4.    Multiscan states a plausible claim for license and quantum meruit.**

4        In the third claim, Multiscan seeks a declaration of license and right to use and/or

5    quantum meruit for the '004 Patent. Dkt. 9, Am. Compl., at 10. Regarding their license

6    and right to use, Multiscan asserts that it is entitled to an irrevocable royalty-free license

7    to the '004 Patent under the "shop right" doctrine. *Id*. at 11.

8        Cohn first argues that Multiscan cannot succeed in its quantum meruit theory

9    because the operating agreement is an "express contract" that controls the dispute and

10    consequently, "no quantum meruit contract will be implied either in fact or law." Dkt. 10,

11    Mot. to Dismiss, at 10. He argues that "[e]ven assuming the express Agreement does not

12    apply, an implied-in-fact contract requires *mutual* agreement and intention of the parties"

13    and Multiscan "fail[s] to allege any intention of the parties to license technologies." *Id*. at

14    11. Finally, he argues that the quantum meruit claims are "preempted by Claim Eight,

15    which Plaintiffs bring under the Oregon Uniform Trade Secrets Act ("TSA")." *Id*. at 12.

16    His preemption argument relies on his assertion that the operating agreement selected

17    Oregon law to govern disputes. *Id*. at 6.

18        Because Cohn's quantum meruit arguments rely on documents that the Court will

19    not consider as a consequence of his Rule 11 violations, his arguments fail. Without the

20    purported operating agreement, Cohn cannot sustain his argument that an express

21    agreement precludes a quantum meruit claim. The lack of operating agreement is

22    similarly fatal to his argument that the Oregon TSA would preempt Plaintiff's quantum

1  meruit claims. He relies on his declaration, Dkt. 7-1, to support his argument that he

2  "independently developed the color sorting technology covered by the '004 Patent and

3  was not unjustly enriched at Plaintiffs expense." Dkt. 10, Mot. to Dismiss, at 12. Because

4  the Court does not consider his declaration for 12(b)(6) purposes, that argument fails.

5      Cohn next argues that Multiscan fails to allege any facts demonstrating

6  circumstances warranting the application of "shop right" for a royalty-free license. Dkt.

7  10, Mot. to Dismiss, at 13. The shop right doctrine generally provides that if an employee

8  utilized their employer's time and resources to conceive or reduce an invention to

9  practice, then the employer is entitled to a royalty-free personal license to practice the

10  invention. *See McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576 (Fed. Cir.

11  1993).

12      Cohn argues that Multiscan failed to provide sufficient facts to satisfy the shop

13  right doctrine because Cohn was not an employee, but rather an officer, and the

14  complaint "lacks details about how, when, and under what conditions the alleged

15  invention underlying the '004 Patent was created, and how Cohn utilized [MTS's]

16  resources in its development." *Id*. at 14. Finally, he asserts that the shop right is

17  technically a defense to patent infringement, and that the absence of an infringement

18  claim by Cohn is fatal to a shop right defense. *Id*. at 15.

19      Multiscan responds that Cohn's arguments rest on external evidence and factual

20  determinations that are improper for 12(b)(6) purposes. Dkt. 14, Resp. Mot. to Dismiss,

21  at 24. On the merits, it contends that whether Cohn was an employee is not dispositive for

22  shop right purposes. Rather, it argues the doctrine is broader and courts should consider

"the full nature of the parties' relationship" to determine whether employers are due a shop right license. *Id*. at 23–24 (citing *Francklyn v. Guilford Packing Co.*, 695 F.2d 1158, 1160 (9th Cir. 1983)). Finally, contrary to Cohn's assertions, Multiscan asserts he indeed claims that it infringed the '004 Patent. *Id*.

The shop right doctrine an equitable doctrine and a creature of common law. *McElmurry,* 995 F.2d 1576. It carries with it an "immense body of caselaw" with plentiful disagreement about which set of circumstances is necessary to create a shop right and the extent of the license itself. *Id*. at 1580. "[W]hile a shop right generally arises out of an employer-employee relationship, it is not necessarily limited to such a relationship." *Francklyn*, 695 F.2d at 1160.

The Court determines that the complaint provides sufficient factual and legal basis to survive Cohn's 12(b)(6) challenge to the shop right claim. Multiscan alleges its time and resources contributed to the creation of the patented material and breadth of caselaw on shop right licenses leaves open the possibility that Multiscan could be owed a royalty-free license even if Cohn was not merely an employee and the license were used externally. *Francklyn*, 695 F.2d at 1160. This is sufficient to render their shop right claim plausible. *Iqbal,* 556 U.S. at 678.

**5.    Multiscan plausibly alleges Cohn misappropriated a corporate opportunity and breached fiduciary duties.**

In the fourth and fifth claims, Multiscan contends Cohn misappropriated a corporate opportunity and breached fiduciary duties, which caused damage to MTUSA. Dkt. 9, Am. Compl., at 12–13.

1    Cohn argues that the statute of limitations has passed on both claims. Dkt. 10,

2    Mot. to Dismiss, at 18. His argument again relies on the documents which the Court

3    declines to consider due to his Rule 11 violations or pursuant to Rule 12(d). For instance,

4    he argues that the claims had a two-year statute of limitation because the purported

5    operating agreement selected Oregon as the choice of law. *Id*. at 9–10. He then relies on a

6    May 2021 email, Dkt. 7-3, regarding the *Avision* lawsuit to assert that Multiscan should

7    have been aware of the '004 Patent to start the limitations period but that it failed to bring

8    their claims within two years from that email. Dkt. 10, Mot. to Dismiss, at 18.

9    Multiscan contests Cohen's reliance on the purported operating agreement and

10    external evidence and provides a proffer of summary judgment evidence to assert that

11    Washington's three-year statute of limitations controls. Dkt. 14, Resp. Mot. to Dismiss, at

12    26. Multiscan argues that even if the Court were to apply Cohn's suggested two-year

13    limitations period, the cause of action did not accrue in 2021 but rather in late 2022 when

14    Multiscan became aware of every element of the cause of action rather than just the

15    existence of the '004 Patent. *Id*. at 27.

16    The Court rejects Cohn's arguments that the statute of limitations bars claims 4

17    and 5 given that he relies on the purported operating agreement and an email, Dkt. 7-3,

18    which the Court disregards pursuant to Rule 12(d). The Court need not decide at this

19    juncture whether Washington or Oregon law controls because Cohn fails to establish as a

20    matter of law that the statute of limitations has run even if it was two years.

21    Cohn next argues that the claims should be dismissed because his "fiduciary

22    duties, if any, were limited by the Operating Agreement." Dkt. 10, Mot. to Dismiss, at 20.

1    Because the Court does not consider the purported operating agreement it rejects his

2    argument.

3          **6.      Multiscan plausibly alleges misappropriation of trade secrets.**

4          In their eighth claim, Multiscan contends that Cohn misappropriated trade secrets

5    and used the secrets for his own benefit. Dkt. 9, Am. Compl., at 15.

6          Cohn argues the Multiscan fails to state a plausible claim under 12(b)(6) because

7    Multiscan "fail[s] to identify the trade secrets and fail to explain why the subject matter

8    meets the statutory standard for trade secret protection" under Oregon's TSA, O.R.S.

9    646.475. Dkt. 10, Mot. to Dismiss, at 23.

10         In general, a claim for trade secret misappropriation must allege that (1) the

11   subject of the claim qualifies as a statutory trade secret; (2) the plaintiff employed

12   reasonable measures to maintain its secrecy; and (3) the defendant's conduct constitutes

13   statutory misappropriation. *See W. Med. Consultants, Inc. v. Johnson*, 835 F.Supp. 554,

14   557 (D. Or. 1993), *aff'd*, 80 F.3d 1331 (9th Cir. 1996) (analyzing Oregon's TSA, O.R.S.

15   646.460). To survive a motion to dismiss, Plaintiffs' must "identify the trade secrets" at

16   issue and explain why it meets the statutory standard for a trade secret. *MAI Sys. Corp. v.*

17   *Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).

18         The Court concludes that Multiscan provides sufficient facts to state a plausible

19   claim for misappropriation of trade secrets. The complaint specifies that Multiscan had

20   trade secrets which it protected related to their pistachio sorting technology and alleges

21   that Cohn misappropriated those trade secrets by secretly filing a patent application in his

22   own name, then threatened to assert that patent against plaintiffs. Dkt. 9, Am. Compl., at

1  9. That is enough to support a "reasonable inference" of liability. *Twombly,* 550 U.S. at

2  556.

3  **IV.  ORDER**

4  Therefore, it is hereby **ORDERED** that Multiscan's motion for sanctions, Dkt. 16,

5  is **GRANTED.** Multiscan shall submit a motion for fees it reasonably incurred as a direct

6  result of Cohn's violations within 14 days of this order. Alternatively, and preferably, the

7  parties shall notify the Court that the sanction has been paid. Defendant Cohn's motion to

8  dismiss, Dkt. 10, is **DENIED** in its entirety.

9  Dated this 20th day of November, 2024.

BENJAMIN H. SETTLE
United States District Judge